STATE OF MAINE
CUMBERLAND, SS.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CUMSC-CV-15-64

JOSEPH RANKIN,                        )
                                      )
        Plaintiff,                    )
                                      )
v.                                    )        ORDER ON DEFENDANTS' MOTION
                                      )        FOR SUMMARY JUDGMENT
DOUGLAS W. SHEA, D.S. FOUNDATIONS,    )
INC., CHASE SHEA, and ADRIEN BERRY    )
                                      )
        Defendants.                   )

STATE OF MAINE
Cumberland. ss. Clerk's Office
SEP 08 2016
RECEIVED

This matter comes before the Court on a motion for summary judgment filed by Defendants Douglas W. Shea, D.S. Foundations & Son, Inc., and Chase Shea. For the following reasons, the Shea Defendants' motion for summary judgment is granted in toto.

## I. FACTS

On April 15, 2011, Plaintiff Joseph Rankin was inspecting property in West Baldwin, Maine owned by Liudas Normantus. (Pl.'s Compl. ¶ 6). Rankin had been authorized to be a caretaker of the property, the site of a former sawmill and waste disposal facility, by Normantus's son, Vitas Normantus. (*Id.*) Rankin saw an unauthorized pickup truck on the property, (*Id.* at ¶ 7), and alleges that he believed it was being used to illegally remove fixtures and equipment from the property. *Id.*

Rankin alleges that the truck had been driven onto Liudas Normantus's property by Defendant Chase Shea. (*Id.* at ¶ 10.) The truck was owned by D.S. Foundations & Son, Inc. (Supp. S.M.F. ¶ 7.) Chase's friend, Josh Verrill, had accompanied him onto Liudas Normantus's property. (Pl.'s Response to Def.'s S.M.F. ¶ 4.)

Rankin used a shotgun to shoot holes into the truck's radiator in an attempt to disable it. (*Id.* at ¶ 17-19). The Defendants Douglas W. Shea (father of Chase), Chase, and D.S. Foundations & Son, Inc. allege that Rankin also fired his shotgun towards Chase and Josh, (Supp. S.M.F. ¶ 11), and held Josh at gunpoint on the ground, (*Id.* at ¶ 16). Rankin denies shooting towards Chase and Josh, (Pl.'s Response to Def.'s S.M.F. ¶ 12), or holding Josh on the ground at gunpoint, (*Id.* at ¶ 16).

Chase made a phone call to his cousin, Adrien Berry, who was subsequently dropped off at Liudas Normantus's property by his grandmother. (Supp. S.M.F. ¶ 18-19.) Adrien got into the driver's seat of the truck, Chase got into the passenger's seat, and Adrien drove the truck off the property. (Pl.'s Response to Def.'s S.M.F. ¶ 19.) Rankin alleges that as Adrien drove off the property, the truck struck a wood telephone pole that had been placed on the property to prevent unauthorized entry. (Pl.'s Compl. ¶ 11.) The pole allegedly "spun and slammed into" Rankin, injuring him. (*Id.* at ¶ 11.) Rankin admits that he did not believe that Adrien or Chase intended to hit him. (Pl.'s Response to Def.'s S.M.F. ¶ 25.) Rankin also alleges that his injuries resulting from the events on April 15, 2011 prevented him from providing care and comfort to his dying wife. (Pl.'s Compl. ¶ 14.)

Rankin filed a complaint against Douglas W. Shea, D.S. Foundations & Son, Inc., Chase Shea, and Adrien Berry on February 20, 2015 in five counts: (I) negligence as to all the defendants related to the operation of the truck, (II) negligent entrustment of the truck to Chase by Douglas, (III) knowingly permitting Chase to operate the truck on a public way, (IV) failure of Douglas to exercise reasonable control over Chase, and (V) vicarious liability of Douglas and D.S. Foundations & Son, Inc., asserting that Chase was operating the truck within the scope of his employment for them and was acting as an agent for them at the time of Rankin's alleged injuries.

Douglas and Chase argue they have no liability to Rankin, even though Douglas did give Chase permission to drive the truck on April 15, 2011, (Supp. S.M.F. ¶ 7), because it was Adrien and not Chase or Douglas who was driving the truck when Rankin was injured, (D.'s Mot. Summ. J. 1), and because Douglas did not give Adrien permission to drive the truck, (Supp. S.M.F. ¶ 20). Rankin alleges that Chase expressly gave Adrien permission to drive the truck, (Pl.'s Response to Def.'s S.M.F. ¶ 20,) and that Chase retained control of the truck even though he was not driving, (Pl.'s Response to Def.'s. Mot. Summ. J. 8).

The Defendants argue that neither Douglas, Chase, nor D.S. Foundations & Son, Inc., is vicariously liable for any injuries to Rankin because Adrien was not an employee or agent of any of them, (D.'s Mot. Summ. J. 2), that the truck was not on Liudas Normantus's property for any work-related activity, (Supp. S.M.F. ¶ 8), and that D.S. Foundations & Son, Inc. was not in the business of scrapping, (*Id.*). Rankin argues that Chase was employed by Douglas and D.S. Foundations & Son, Inc. on April 15, 2011, working for Douglas on the days he did not attend school, (Pl.'s Response to Def.'s. S.M.F. ¶ 6), and that Chase gave Adrien permission to drive the truck, (*Id.* at ¶ 20). Rankin admits that on April 15, 2011 the truck was not on the Liudas Normantus property for any work-related activity for D.S. Foundations & Son, Inc. and that D.S. Foundations & Son, Inc. was not in the business of scrapping. (*Id.* at ¶ 8.)

The Defendants argue that Plaintiff Rankin attempted to assert two additional claims in his response to their motion for summary judgment that he should not be allowed to raise during litigation: 1) that D.S. Foundations & Son, Inc., through its treasurer, negligently entrusted the truck to Adrien, and 2) that Chase is liable for Adrien's actions because Chase retained control of the truck but permitted Adrien to drive it. (D.'s Reply Memo. Supp. Mot. Summ. J. § II(A)).

## II.    STANDARD OF REVIEW

Summary judgment is appropriate if, based on the parties' statements of material fact and the cited record, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. M.R. Civ. P. 56(c); *Dyer v. Dep't of Transp.*, 2008 ME 106, ¶ 14, 951 A.2d 821. "A material fact is one that can affect the outcome of the case. A genuine issue of material fact exists when the fact finder must choose between competing versions of the truth." *Dyer*, 2008 ME 106, ¶ 14, 951 A.2d 821 (internal citation and quotation marks omitted). When deciding a motion for summary judgment, the court reviews the evidence in the light most favorable to the non-moving party. *Id.*

If the moving party's motion for summary judgment is properly supported, the burden shifts to the non-moving party to respond with specific facts indicating a genuine issue for trial in order to avoid summary judgment. M.R. Civ. P. 56(e). When a defendant moves for summary judgment, the plaintiff must respond with evidence establishing a prima facie case for each element of their cause of action. *Watt v. UniFirst Corp.*, 2009 ME 47, ¶ 21, 969 A.2d 897 (internal citation and quotation marks omitted). The evidence proffered by the plaintiff "need not be persuasive at that stage, but the evidence must be sufficient to allow a fact-finder to make a factual determination without speculating." *Estate of Smith v. Cumberland Cnty.*, 2013 ME 13, ¶ 19, 60 A.3d 759. If a plaintiff fails to present sufficient evidence on the essential elements, then the defendant is entitled to a summary judgment. *Watt*, 2009 ME 47, ¶ 21, 969 A.2d 897.

If the party moving for summary judgment bears the burden of persuasion on the claim or defense, then the moving party must establish the existence of each element of the claim or defense without dispute as to any material fact in the record in order to obtain

summary judgment. *Cach, LLC v. Kulas*, 2011 ME 70, ¶ 9, 21 A.3d 1015. The non-moving plaintiff must then respond with specific facts indicating a genuine issue for trial in order to avoid summary judgment. M.R. Civ. P. 56(e).

## III. ANALYSIS

### 1. Count 1 – Negligence (All Defendants)

It is undisputed that neither Chase nor Douglas was driving the vehicle at the time of Rankin's injury. As such, and at a minimum, Plaintiff fails to establish a prima facie case that Rankin's injuries were proximately caused by any of the Shea Defendants. It is unclear as to what legal duty a mere occupant of a vehicle owes to a person injured by the driver's alleged negligence. The question is more vexing when one considers what duty would be owed to Rankin by Douglas or D.S. Foundations & Son, Inc., or by Douglas who was not even at the scene of the accident when it occurred. During arguments, Plaintiff's counsel suggested that Maine tort jurisprudence does not distinguish between occupant and operator of a motor vehicle for purposes of tort liability. This Court is not acquainted with any such authority.

### 2. Count 2 – Negligent Entrustment (Douglas and D.S. Foundations)

Negligent entrustment requires plaintiff to establish a prima facie case that a driver was incompetent, inexperienced, or reckless and the defendant knew it or had reason to know; the defendant nevertheless entrusted a vehicle to the river; doing so generated an appreciable risk of harm to the plaintiff, giving rise to a relational duty on the part of the defendant; and the injuries were proximately caused by the negligent entrustment. *Roussel v. Lucas*, 2007 WL 1576741 (Me. Super. Ct.).

There is no record evidence to support any element of the negligent entrustment claim. Plaintiff admits that the truck was not on the property being used for the

business of D.S. Foundations. None of the Shea Defendants was operating the truck at the time the injury occurred. There is nothing in the record to support the notion that Chase (who was not driving the truck at the time of the injury) was incompetent, inexperienced or a reckless driver. The only offering by Plaintiff was that Chase had a driving violation shortly after becoming licensed. Beyond that Plaintiff attempts to argue that Chase's general rebellious nature and failure to apprise his parents of his whereabouts with the company vehicle satisfy the elements of the tort to defeat the motion. This argument is unavailing. A single traffic violation cannot possibly satisfy the "incompetent, inexperienced, or reckless" requirement. Should there be any doubt that is true, the tort requires that in entrusting the vehicle to the driver, the defendant created a substantial risk of harm to the plaintiff. Even in a scenario in which Chase was driving the vehicle at the time of the injury, there is no evidence that his father allowing him to drive the vehicle with the knowledge, actual or imputed, that he had a single driving violation is prima facie evidence of causing a substantial risk to Plaintiff.

Plaintiff attempts to generalize this tort beyond the operation of a motor vehicle to include all indicia of poor character. First, it is far from clear that even if this was a correct statement of the law that Plaintiff would have satisfied a prima facie showing that the element of incompetence, inexperience, and recklessness is satisfied. More self-evidently true, however, is that the tort is tailored to the risk created by entrusting a motor vehicle to a driver whose driving is known or should be known to be any one of those things.

### 3. Count 3 – Violation of 29-A M.R.S. § 1651 (Douglas and D.S. Foundations).

The statute establishes joint liability of an owner of a vehicle who knowingly permits a minor to operate that owner's vehicle on a public way, if that minor causes damages as a result of that minor's negligence while operating the motor vehicle.

Without reaching the issue of whether the truck was being operated on a public way at the time, Chase was not operating the motor vehicle and therefore did not cause Plaintiff's injuries.

### 4. Count 4 – Negligent failure to control a minor (Douglas)

The tort requires a showing that a parent must exercise control over his minor child if he knows or should know of the reason and the necessity to control that parent's child. *Merchant v. Mansir*, 572 A.2d 493, 494 (Me. 1990). There is nothing in the record which would suggest a specific tendency of Chase which otherwise would require Douglas to exercise control over him. Even if the Court were to accept the rather benign argument that Chase is somewhat rebellious and does not fastidiously let his parents know of his whereabouts, that has little to do whether he was a poor driver. Even if there was evidence that Chase was a poor driver, that could not possibly affix tort liability to Douglas when Chase did not cause Plaintiff's injuries by virtue of the undisputed fact that he was not driving the truck at the time.

### 5. Count 5 – Vicarious liability (Douglas and D.S. Foundations)

Plaintiff admitted that Chase was not acting in the course and scope of his employment at the time of the accident, which substantially undermines any claim of vicarious liability. More elementally true is the fact that there has been no prima facie evidence that Chase has any liability to Plaintiff as he was not operating the vehicle at the time the injury occurred.

### 6. Addendum claims

Plaintiff attempted to assert theories of legal liability, which were not pled. The Court declines to address claims not properly pled other than to note that such alternative theories of liability would fail for substantially the same reasons articulated herein. Moreover, whether Chase expressly gave permission to Berry to drive the truck

would not have altered the outcome with respect to the Shea Defendants. The Court addresses this argument because it might reasonably apply to the claims that were actually pled.

Plaintiff cites a litany of insurance coverage cases that interpret the so-called permissive use exclusion. Plaintiff contends that this analysis should be useful to the court in analyzing tort liability. Those cases involve an analysis of contractual language contained in homeowner's and automobile insurance policies granting a named insured and other other insureds by definition certain liability coverage for injuries caused by one's negligence. The fortuity that Chase may or may not have granted permission to Berry does not obviate the yawning deficiencies in Plaintiff's claims against the Shea Defendants. Reference to the *Craig v. Barnes* line of cases that evaluate whether the operator of a motor vehicle had a reasonable belief that he was entitled to use the vehicle from the named insured or from any other person given unlimited permission to use the vehicle from the named insured, is of no analytical value to any tort claim in this case.

Shea Defendants' motion for summary judgment is granted.

The Clerk is directed to enter this Order on Defendants' Motion for Summary Judgment upon the civil docket by reference pursuant to Rule 79(a) of the Maine Rules of Civil Procedure.

Date:   September 8, 2016

Lance E. Walker
Justice, Superior Court